**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MANDY ARCHIBALD, et al,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 22-00312-JB-M** |
| | ) | |
| **CITY OF CREOLA, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendant William Brannon's ("Brannon") Motion to Dismiss (Doc. 18) and Defendants City of Creola (the "City"), Frank Hammond ("Hammond") and Mark Howell's ("Howell") (collectively the "Creola Defendants") Motion to Dismiss (Doc. 21). The Court conducted a hearing at which counsel for the parties appeared and argued. Upon due consideration of the filings and the oral arguments of the parties, and for the reasons stated on the record of the hearing, the Court concludes that the Motions are due to be **GRANTED IN PART** and **DENIED IN PART**.

## I. INTRODUCTION

The Plaintiffs in this case are the mother (Mandy C. Archibald, hereinafter "Archibald") and maternal grandparents (Charlie and Randy McSwain, hereinafter "the McSwains") of two minor children who are the subject of a Custody Order incorporated into a Judgment of Divorce Order entered in the Circuit Court of Mobile County, Alabama. (Doc. 1). In that Order, Plaintiff Archibald was awarded "sole legal and physical custody of the minor children." (*Id*. at Ex. 1). Defendant Christopher Barron ("Barron") was awarded visitation rights. (*Id*.). The Complaint

alleges a dispute on the morning of December 26, 2020, over Mr. Barron's compliance with the terms of the Circuit Court's Order. The causes of action alleged in the Complaint arise from all three Plaintiffs' arrests on December 31, 2020, on felony warrants charging them with "interference with child custody."

The Complaint in this matter consists of ten counts. Count One asserts Section 1983 claims under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Doc. 1). Counts Two through Nine assert a variety of state law tort claims. (*Id*.). Count Ten asserts civil conspiracy claims under § 1983 and state law. (*Id*.). Brannon and the Creola Defendants ask the Court to dismiss many of Plaintiffs' claims because they contend each fails to state a claim for which relief can be granted. Alternatively, they ask the Court to dismiss Plaintiffs' remaining claims because they believe they are entitled to qualified immunity and/or state actor immunity.

## II. FACTS ALLEGED IN THE COMPLAINT

The Complaint alleges that on November 15, 2016, Archibald and Barron were married. (Doc. 1). The couple remained married for two and a half years, and during the pendency of the marriage had two daughters, D.B and R.B. (*Id*.). Archibald and Barron were divorced by Order of the Mobile County Circuit Court on May 17, 2019. (*Id*.). This Order is the genesis of the present dispute.

In the divorce action, Archibald was awarded "sole, legal and physical custody" of the two girls. (*Id*.). Barron was granted visitation rights. (*Id*.). The Order required Barron to notify Archibald at least 48 hours in advance when he wanted to pick up the children for visitation. Additionally, he was required to notify Archibald "in advance on where he intends to exercise his

visitation and will make sure she has a cell phone number to reach the children during his visitation." (*Id*.). On October 13, 2020, Barron provided written notice to Archibald that "unless otherwise stated at the 48-hour notice of pickup, when the children [D.B.] & [R.B.] are in my custody, we will remain at the address of: 1300 Schillinger Road S Lott N33 Mobile, AL 36695." (*Id*.).

The Complaint alleges that on December 24, 2020, at 7:41 a.m., Barron texted Archibald, saying "Picking up the girls at 9 Saturday." (*Id*.). On December 26, 2020, at about 9:00 a.m., Barron arrived at Archibald's home to pick up the girls for his visitation during the Christmas Holiday. At this time, Archibald put the girls into the car seats located inside Barron's truck.

Once the children were strapped in, Barron's girlfriend handed Archibald a note with a Mississippi address and telephone number listed on it. Archibald was then informed that the girls would be going to a rural location in Mississippi where there would be no cell phone service.

The Complaint alleges Archibald believed Barron's plans did not comply with his visitation rights as set out in the Judgment of Divorce. (*Id*.). Archibald informed Barron of her position and asked the McSwains to help remove the children from Barron's truck. The Complaint alleges Barron became angry and began to scream. At this point Archibald took the children into the home to keep them from seeing their father's behavior.

Barron left Archibald's home and returned a short time later with Creola Police Officer William Brannon. (Doc. 1). The McSwains were outside Archibald's home when Brannon arrived. (*Id*.). The Complaint alleges Brannon asked, "Where are the kids?". Mrs. McSwain stated that she did not know. (*Id*.).

Brannon then spoke privately with Barron and communicated over his police radio. (*Id*.). A few minutes later, Satsuma Police Officer Moore arrived and spoke privately with Barron "outside of the hearing of the McSwains." (*Id*.).

After speaking to Barron, Moore approached Mrs. McSwain, asking "where are the kids?". (Doc. 1). Again, Mrs. McSwain stated that she did not know. (*Id.*). The Complaint then states Brannon commented that Archibald "only has one vehicle and it's sitting right there and hasn't moved, so how did she leave." (*Id*.). While it is unclear whether this was a rhetorical question, the Complaint does not indicate a response from the McSwains.

Moore then knocked on the home's front door. (*Id*.). When the door was not answered, Moore asked the McSwains if they had a key to the house. The Complaint reflects that Mrs. McSwain told Moore that although they owned the home, they did not live there. (*Id*.). At this point, Moore warned Mrs. McSwain, stating "[y]ou are going to jail for interfering with the custody of a minor child. This man is here to get his children." (*Id*.). The Complaint also reflects that Mrs. McSwain requested that Brannon and Moore have a supervisor come out and that Moore refused this request. After assuring the McSwains that they were going to be arrested, Brannon and Moore as well as Barron and his girlfriend left the property and did not return.

The Complaint alleges that sometime between December 26 and December 30, 2020, Creola Police Chief Hammond and Creola City Council Member Howell discussed Brannon's encounter with the McSwains. One or both Defendants spoke with Brannon about this interaction and his threats of arrest. The Complaint alleges Brannon was specifically directed by Chief Hammond and/or Council Member Howell not to swear out arrest warrants for Archibald and the McSwains. (*Id*. at 13).

Despite the specific direction from Chief Hammond and/or Council Member Howell, on December 30, 2020, Brannon appeared at the Mobile County Courthouse and signed six felony warrants against Archibald and the McSwains for interference with custody of a minor. (*Id*.). Plaintiffs allege that later on the 30th, Chief Hammond warned Mrs. McSwain that Brannon had sworn out warrants for her arrest and that she should stay out of Creola because he was actively looking for her to place her under arrest. (*Id*.).

On December 31, 2020, the Plaintiffs turned themselves in at the Mobile County Metro Jail. (Doc. 1). They were each booked on two counts of interference with custody and released on bond five hours later. (*Id*.). Plaintiffs allege their mugshots appeared on social media. (*Id*.).

**III. STANDARD OF REVIEW**

Defendants argue both that the allegations of Plaintiffs' Complaint are due to be dismissed because (1) they all fail to state a claim for which relief can be granted and (2) all of Plaintiffs' allegations should be dismissed because they are entitled to qualified immunity from suit. Each standard of review is discussed in turn.

**A. Motion to Dismiss Standard.**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of*

*Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id*.). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc*., 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

The evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.[1]

[1] "[U]unsupported conclusions of law or of mixed fact and law" will not defeat a Rule 12(b)(6) motion for dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded

**B. Qualified Immunity Standard.**

Additionally, Brannon and the Creola Defendants contend they are entitled to dismissal of the claims against them because as law enforcement officers they are entitled to qualified immunity. "To receive qualified immunity, an officer bears the initial burden of establishing that he was acting within his discretionary authority." *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019). "After a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time." *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). Plaintiffs must satisfy this burden by a preponderance of the evidence.

**IV. ANALYSIS**

First the Court will address the counts Defendants argue should be dismissed because they fail to state a claim for which relief can be granted. Then, the Court will turn to Defendants' claims of qualified and state actor immunity as to the remaining Counts of the Complaint. Plaintiffs' Complaint consists of ten counts, alleged against eight Defendants. (Doc. 1). These counts include:

---

factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664, 129 S.Ct. 1937). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. (quoting *Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937).

| Count | Allegation | Defendant(s) |
|---|---|---|
| I | 42 U.S.C. § 1983 | All Defendants |
| II | False Imprisonment | Brannon, Hammond, Howell, Moore and Barron |
| III | Malicious Prosecution | Brannon, Hammond, Howell, Moore and Barron |
| IV | Abuse of Process | Brannon, Moore and Barron |
| V | Negligence | Brannon, Hammond, Howell, Harrell, Moore and Barron |
| VI | Wantonness | Brannon, Hammond, Howell, Harrell, Moore and Barron |
| VII | Outrage | Brannon, Moore and Barron |
| VIII | Invasion of Privacy | Brannon, Moore and Barron |
| IX | Defamation | Brannon, Moore and Barron |
| X | Conspiracy | Brannon, Moore and Barron |

(Doc 1). While Brannon is the subject of every count in the Complaint, Defendants Hammond and Howell are only named in Counts I, II, III, V, and VI. (*Id.*). Defendant City of Creola is not specifically named in any count of the Complaint.

**A. Plaintiffs' Ten Causes of Action.**

**1. Count I – Violation of 42 USC §1983**

In Count I, Plaintiffs bring claims against all eight Defendants under 42 U.S.C. § 1983. Section 1983 is a statutory vehicle for addressing the violation of civil rights. It provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983. In a Section 1983 action, a district court must determine "whether the plaintiff has been deprived of a right secured by the Constitution and laws." *Glenn v. Brumby*, 724 F. Supp. 2d 1284, 1296 (N.D. Ga. 2010), aff'd, 663 F.3d 1312 (11th Cir. 2011) (quoting *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979)).

Plaintiffs allege their rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution have been violated by the various Defendants. It is clear from the face of the Complaint that these allegations arise from the felony arrest warrants which were issued for each of them and their eventual booking and brief custodial confinement before the charges were dropped. The specific allegations detailing each of these alleged constitutional violations will be considered in turn.

**(a) Plaintiffs' First Amendment Claim.**

The basic pleading requirements of a First Amendment claim are well settled in the Eleventh Circuit: "[t]o state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (citing *Constantine v. Rectors and Visitors of George Mason Univ*., 411 F.3d 474, 499 (4th Cir.2005); *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir.2002).

The Court has reviewed the allegations of the Complaint in the light most favorable to the Plaintiffs yet is unable to discern: (1) which First Amendment right the Defendants allegedly

violated, (2) what activity Plaintiffs engaged in that was protected by the First Amendment, and (3) that the Defendants were aware of, and motivated by, any protected activity. *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001) ("At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory."). For this reason, the Court finds Plaintiffs have failed to state a First Amendment claim for which relief may be granted.

**(b) Plaintiffs' Fourth Amendment Claim.**

Because of the alleged facts of this case, Plaintiffs' Fourth Amendment claim must be analyzed as a claim for malicious prosecution. *See Chancy v. Bruno*, 679 F. App'x 864, 867 (11th Cir. 2017) ("Because Chancy was arrested pursuant to a warrant, the district court properly evaluated his false arrest claim as a malicious prosecution claim."). In order to state a malicious prosecution claim under the Fourth Amendment, "the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (internal citations omitted). To state a claim for the common law tort of malicious prosecution, Plaintiffs must allege "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

The facts alleged by Plaintiffs are sufficient to state a claim against Brannon, but not the other Creola Defendants. Specifically, Plaintiffs have not alleged that any Defendant other than

Brannon instituted or continued criminal prosecutions against them. As alleged in the Complaint, the warrants were instituted and pursued by Brannon alone. No Defendant participated in the subsequent arrest of Plaintiffs as Plaintiffs voluntarily turned themselves in to Metro Jail pursuant to the warrants. Accordingly, the Complaint does not state Fourth Amendment claims against the Creola Defendants. The Court does find, however, that Plaintiffs' Fourth Amendment Claim is sufficient as to Brannon to survive the Motion to Dismiss.

**(c) Plaintiffs' Fifth Amendment Claim.**

Plaintiffs' Fifth Amendment claim against all Defendants is also problematic. "The Fifth Amendment, which protects individuals from being 'deprived of life, liberty, or property, without due process of law,' U.S. Const. amend. V, applies to only federal, not state, actors." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 882 (11th Cir. 2016) (citing *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir. Jan. 12, 1981) (Fifth Amendment protection extends to all persons within the United States but attaches only when the federal government seeks to deny a liberty or property interest)). It is apparent from the face of the Complaint that no Defendant has any relation to the federal government and Plaintiff does not suggest otherwise. For this reason, Plaintiffs' Fifth Amendment claim will be dismissed.

**(d) Plaintiffs' Fourteenth Amendment Claim.**

Plaintiffs contend all Defendants violated their rights under the Fourteenth Amendment. The Fourteenth Amendment specifically addresses pretrial deprivations of liberty such as malicious prosecution and false arrest. It is well settled that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due

process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (alteration omitted) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality op.)). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. "[A]n allegation of prosecution without probable cause must . . . be analyzed under the Fourth Amendment, without reference to the more general considerations of substantive due process."[2] *Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996).

Plaintiffs also seek relief by virtue of the Fourteenth Amendment's equal protection clause. To state a claim for selective enforcement, a complaint must plead factual allegations that plausibly demonstrate "both discriminatory effect and discriminatory purpose." *B.T. ex rel. Jackson v. Battle*, No. 21-10318, 2021 WL 4147087, at *3 (11th Cir. Sept. 13, 2021); *see also United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("The requirements for a selective-prosecution claim draw on ordinary equal protection standards. The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.") (citations omitted). The Complaint does not plead factual allegations plausibly demonstrating a discriminatory effect – that is, that Defendants treated other similarly-situated individuals differently than he treated the Plaintiffs. *See Amnesty Int'l v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009) ("In order to state an equal protection claim, the plaintiff must

---

[2] A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." *Lundy v. Cox*, No. 5:16-CV-71, 2018 WL 3978181, at *3 (S.D. Ga. July 16, 2018), report and recommendation adopted, No. 5:16-CV-71, 2018 WL 3978983 (S.D. Ga. Aug. 20, 2018) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably."). The Complaint also does not plausibly allege Defendants were motivated by a discriminatory purpose. *See Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995) ("proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim"). For these reasons, the Complaint, as pled, fails to state a claim under the Fourteenth Amendment and Plaintiffs' Fourteenth Amendment claims are due to be dismissed.

**2. Count II – False Imprisonment**

Count Two alleges Brannon, Moore, and Barron caused the unlawful arrest of the McSwains on December 26, 2020, and Brannon, Hammond, Howell, Moore, and Barron caused the unlawful detention of all three Plaintiffs on December 31, 2020. (*See* Doc. 1). "A false arrest requires proof that the defendant caused her to be arrested without probable cause." *Harris*, 216 So. 3d at 1213 (internal punctuation and citation omitted). In the Complaint, Plaintiffs allege that Brannon was specifically instructed not to swear out arrest warrants for the Plaintiffs. Conversely, Brannon, in his Motion to Dismiss, contends he had probable cause to swear out the arrest warrants. Brannon is asking this Court to make a factual determination, which of course is inappropriate at the motion to dismiss stage. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) ("The scope of the review must be limited to the four corners of the complaint."). Accordingly, the Court finds that the Motion to Dismiss must be denied as to Count II.

**3. Count III – Malicious Prosecution**

Count Three asserts state law tort claims against Brannon, Hammond, and Howell for malicious prosecution. (Doc. 1). In order to prove a claim of malicious prosecution, a plaintiff must prove: "(1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage." *Cutts v. Am. United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987). Although Brannon argues he had sufficient probable cause to swear out arrest warrants against all three Plaintiffs, the Complaint specifically alleges he did not. (Doc. 1). Plaintiffs' allegation that Brannon was specifically instructed not to issue arrest warrants for Plaintiffs in relation to this matter is sufficient to suggest that probable cause for the arrest was lacking. Consequently, Brannon's Motion to dismiss is denied as to Count III.

**4. Count IV – Abuse of Process**

Count Four asserts a claim for abuse of process against Brannon. "The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998).

> The tort of abuse of process differs from the tort of malicious prosecution; the tort of abuse of process is concerned with the wrongful use of process after it has been issued, while the tort of malicious prosecution is concerned with the wrongful issuance of process.

*Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1024 (Ala. Civ. App. 1999). "An abuse of process claim in Alabama may not rest solely on allegations that the suit originated out of some ulterior motive and with malice." *Union Ins. Co. v. Blakeney Palmer Co.*, No. 7:12-CV-4072-RDP, 2014 WL 12597416, at *2 (N.D. Ala. Apr. 17, 2014). "[The defendant] cannot be liable for an abuse of process claim unless [he] somehow acted outside the boundaries of legitimate procedure *after the charge had been filed*." *Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001) (emphasis added).

"It is the use of the process for something other tha[n] its intended result, for example, to extort payment for a debt, that results in liability for abuse of process." *Barnett*, 773 So. 2d at 1025. Count Four does not state a claim for abuse of process because the Complaint does not allege Brannon made wrongful use of the arrest warrants after they were issued. Because Plaintiffs' claims relate to the issuance of criminal process, Count Four cannot state a claim for abuse of process and is due to be dismissed.

**5. Counts V and VI – Negligence and Wantonness**

Plaintiffs assert negligence and wantonness claims against all Defendants. These claims are based on the proposition that Defendants breached a duty to "refrain from violating Plaintiffs' rights and causing their arrest without probable cause." (Doc. 1). This effort to recast their malicious prosecution claims in terms of negligence or wantonness cannot state a claim upon which relief can be granted.

> In *Cutts v. American United Life Ins. Co*., 505 So. 2d 1211, 1214 (Ala. 1987), our supreme court elaborated on claims arising out of facts within the ambit of clearly recognized theories of law, i.e., malicious prosecution, but couched in general terms of negligence and wantonness:
>
> "The wrongdoing which Cutts alleges centered around the procurement of the indictment against him. Indeed, the damages he claims are for the expense, emotional suffering, and humiliation incurred in being indicted and having to defend himself. The policy disfavoring malicious prosecution claims would also disfavor bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms, especially general allegations of negligence, willfulness, or wantonness. Therefore, in the absence of any other clearly recognized theory under which Cutts could proceed, his complaint must be treated as one for malicious prosecution."
>
> Based on the foregoing, we conclude that Grant's claims for negligence and wantonness must fail, because they are based on other clearly recognized theories of law, which we have previously addressed.

*Grant v. Dolgen Corp*., 738 So. 2d 892, 897 (Ala. Civ. App. 1998). The logic applied by the Alabama Supreme Court applies equally to the facts of this case. Plaintiffs' claims are clearly based on other recognized theories of law. As a result, the negligence and wantonness claims in Counts V and VI are due to be dismissed.

**6. Count VII – Outrage**

Count Seven asserts state law claims against Brannon for outrage. (Doc. 1). Under Alabama law, outrage is an extremely limited tort. *See Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000). The elements of an outrage claim are:

> "(1) the defendant . . . intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act [was] extreme and outrageous; (3) the act ... caused plaintiff['s] distress; and (4) plaintiff ['s] emotional distress [was] so severe that no reasonable person could be expected to endure it."

*Palmer v. Infosys Techs. Ltd. Inc*., 888 F. Supp. 2d 1248, 1253 (M.D. Ala. 2012) (quoting *K.M. v. Alabama Department of Youth Services*, 360 F.Supp.2d 1253 (M.D.Ala.2005)).[3]

Under the circumstances of this case, the Court finds the Motion to Dismiss Count VII is due to be granted. First, the allegations of the Complaint do not satisfy the elements of outrage as identified above. Second, even if the allegations of the Complaint were themselves sufficient, the Alabama Supreme Court specifically held that an allegation of malicious prosecution will not support a claim for outrage. Accordingly, Brannon's motion with respect to the tort of outrage is due to be granted. *See Lumpkin v. Cofield*, 536 So. 2d 62, 65 (Ala. 1988); *see also Byrd v. Jones*,

[3] As noted previously, the conduct supporting Plaintiffs' malicious prosecution claims may not also support another tort. *See Cutts*, 505 So. 2d at 1214 ("The policy disfavoring malicious prosecution claims would also disfavor bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms . . . .").

No. 7:14-CV-01469-TMP, 2015 WL 2194697, at *19 (N.D. Ala. May 11, 2015). Count VII is dismissed.

**7. Count VIII – Invasion of Privacy**

Count Eight asserts a claim against Brannon for invasion of privacy. (Doc. 1). Under Alabama law invasion of privacy may be based on one of four separate liability theories:

> 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use.

*Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 708 (Ala. 1983). The Plaintiffs' Complaint reveals they are proceeding under the false light theory. (*See generally* Doc. 1).

The Alabama Supreme Court recited the elements of the false light theory in *Butler v. Town of Argo*:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

871 So. 2d 1, 12 (Ala. 2003) (quotations omitted) (quoting *Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993)). The Plaintiffs' false light claims fail for the lack of publicity and the lack of falsity.

The Alabama Supreme Court has addressed the definition of publicity for the purposes of a false-light claim:

> In the context of a false-light claim, "giving publicity" is "making a 'matter . . . public, by communicating it to the public at large, or to so many persons that the

> matter must be regarded as substantially certain to become one of public knowledge." *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000) (quoting Restatement (Second) of Torts § 652D, cmt. a. (1977) (emphasis added)). "Publicity is a concept more difficult to prove than [mere] publication," which is an element of a defamation claim. *Gary v. Crouch*, 867 So. 2d 310, 318 n.6 (Ala. 2003). The "publicity" element is not satisfied by the "'communicat[ion of] a fact . . . to a single person or even to a small group of persons.'" *Birmingham News*, 778 So. 2d at 818 (quoting Restatement (Second) of Torts § 652D, cmt. a. (1977) (emphasis added in *Birmingham News*; some emphasis omitted)).

*Regions Bank v. Plott*, 897 So. 2d 239, 245 (Ala. 2004).

The Complaint does not plead factual allegations which plausibly demonstrate Brannon gave publicity to any information concerning the Plaintiffs. The Complaint alleges that various social media sites published Plaintiffs' mugshots, not Brannon. (Doc. 1).

Even if the publicity element were satisfied by the allegations of the Complaint, to sustain a false light claim, "the information made public must be false." *Butler*, 871 So. 2d at 12.

> Thus, falsity is the *sine qua non* of a false-light claim. Moreover, unlike defamation, truth is not an affirmative defense to a false-light claim; rather, "falsity" is an element of the plaintiff's claim, on which the plaintiff bears the burden of proof.

*Plott*, 897 So. 2d at 244. The Plaintiffs' invasion of privacy claim does not plead factual allegations which plausibly demonstrate any information publicized about Plaintiffs that was false. *See Anderson v. City of Homewood*, No. 2:16-CV- 00439-TMP, 2018 WL 2933960, at *15 (N.D. Ala. June 12, 2018) (holding plaintiff's false light claim arising from his arrest was not actionable where the defendant's statement about the arrest was not false). Because the facts alleged in the Complaint do not support a claim of invasion of privacy, Count VIII is due to be dismissed.

**8. Count IX – Defamation**

Count Nine asserts state law tort claims against Brannon for defamation. (Doc. 1, PageID.29-30.)

> "To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable *per quod*)."

*Nelson v. Lapeyrouse Grain Corp*., 534 So. 2d 1085, 1091 (Ala. 1988) (citations omitted). The Complaint alleges that Brannon "published" false information to the magistrate who issued the arrest warrants. (Doc. 1). Specifically, the Complaint alleges Brannon informed the magistrate that each plaintiff "did on or about 12/26/2020, knowingly take or entice [name of child], a child under the age of 18 from the lawful custody of its parent, guardian or other lawful custodian to wit: Christopher Barron, in violation of 13A-6-45 of the Code of Alabama, against the peace and dignity of the State of Alabama." (*Id*.). Count Nine's defamation claims fail and are due to be dismissed.

First, the Plaintiffs cannot couch their malicious prosecution claims in terms of another tort. *See Cutts*, 505 So. 2d at 1214 ("The policy disfavoring malicious prosecution claims would also disfavor bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms . . . ."). Consequently, Plaintiffs effort to bring multiple claims for the same actions fail. Second, the information Brannon provided the magistrate is privileged and cannot form the basis of a defamation claim. *See Cutts*, 505 So. 2d at 1215 ("Summary judgment was proper as to this count because an absolute privilege exists in favor of those involved in judicial proceedings, including judges, lawyers, jurors, and witnesses, shielding them from an action for defamation."). In *Byrd v. Jones*, No. 7:14-CV-01469-TMP, 2015 WL 2194697, at *21 (N.D. Ala. May 11, 2015), the United States District Court for the Northern District of Alabama

held that an officer's "completion of the affidavit . . . seeking the arrest warrant is privileged" under Alabama Code § 13A-11-61. Accordingly, Count IX is due to be dismissed.

**9. Count X – Conspiracy**

Count Ten asserts conspiracy claims against Brannon. (Doc. 1). "The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013). Under federal law, the Plaintiff must show an underlying constitutional violation. *See Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1288 (11th Cir. 2009) (per curiam) (holding that a "plaintiff must demonstrate a denial of constitutional rights to sustain a conspiracy claim under § 1983"). Under state law, "a plaintiff [also] must have a viable underlying cause of action." *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993). Because the Court has found that Plaintiffs' Complaint states a viable Constitutional violation against Brannon, his Motion to Dismiss must be denied. *See N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990) ("the plaintiff must prove an actionable wrong to support the conspiracy"); *Callens v. Jefferson Cnty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000) ("A plaintiff alleging a conspiracy must have a valid underlying cause of action.").

The civil conspiracy claims also allege an agreement to violate the Plaintiffs' constitutional rights or to commit a tort against them by Defendants Brannon, Moore, and Barron. *See Grider*, 618 F.3d at 1260 ("A plaintiff claiming a § 1983 conspiracy must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights.") (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992)); *First Bank of Childersburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996) ("The plaintiff must allege and prove that the

claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy."). The Complaint alleges joint action by Defendants Brannon, Moore, and Barron. (*See* Doc. 1). These allegations include private discussions, actions by Defendant Moore, who was not a member of the Creola Police Department, and threats allegedly made to the McSwains. (*See id*.). For this reason, Count Ten's allegations of an agreement are not entirely conclusory, as Brannon contends. (*See* Doc. 19). Because Plaintiff has satisfied the notice pleading requirements, the Motion to Dismiss Count X is denied.

**B. Dismissal By Virtue of Defendants' Claims of Qualified Immunity and/or State Actor Immunity.**

Defendants Brannon and the Creola Defendants contend they are entitled to summary judgment on all of Plaintiffs' claims because they are entitled to qualified immunity and/or state actor immunity. The affirmative defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal immunity question." *Behrens v. Pelletier*, 516 U.S. 299, 306, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (internal quotation marks omitted). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The public policy purpose undergirding the defense of qualified immunity is that of allowing public officials to perform

discretionary functions without the fear of personal liability or harassing litigation. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007); *see also Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'").

The qualified immunity analysis does not consider an officer's alleged subjective intent; rather, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt*, 565 U.S. at 546. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

The Court must first determine whether Defendants were acting within the scope of their discretionary authority, because that [or "acting within the scope of discretionary authority"] is necessary to the application of qualified immunity. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). In applying this test, courts consider the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266.

Here, Plaintiffs' claims arise from Brannon swearing out arrest warrants against each of the Plaintiffs after allegedly his superiors specifically ordered him not to. Brannon ignores this allegation and contends he had probable cause to seek the arrest warrants. The Complaint's allegations he was specifically directed not to seek those warrants by the very superiors that delegate his authority, diminishes Brannon's position and weighs against a finding that he was acting within his authority. Brannon's invitation for the Court to weigh the evidence and find that he was within his discretionary authority is not allowed at the motion to dismiss stage. *See St. George,* 285 F.3d at 1337 (11th Cir. 2002) ("While there may be a dispute as to whether the alleged facts are the actual facts, in reviewing the grant of a motion to dismiss, we are required to accept the allegations in the complaint as true.").[4]

Hammond and Howell, on the other hand, are entitled to qualified immunity as to Plaintiffs' constitutional claim pursuant to § 1983. The allegations of the Complaint indicate they were public officials acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *See Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003); *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (citing *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988)). Accordingly, these Defendants are entitled to the dismissal of Plaintiffs 'claims against them.

**C. The City of Creola's Motion to Dismiss is Due to be Granted.**

Although Plaintiffs assert ten causes of action in the Complaint, no single claim is specifically brought against the City of Creola. However, considering the broad allegations made

[4] Because the Court has found that the Complaint fails to state claims against the Creola defendants for malicious prosecution, negligence or wantonness, the Court does not reach their claim that they are entitled to qualified immunity and/or state actor immunity.

by Plaintiffs as claims against the City, pursuant to Section 1983, based on the City's policy or custom or failure to train/supervise, Plaintiffs claims still fail.

Municipalities like Creola can only be subject to a very narrow class of claims under 42 U.S.C. § 1983. The Supreme Court has considered such municipal liability:

> Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable soley because it employees a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Monell v. Department of Social Services of city of New York*, 436 U.S. 658, 691 (1978). The Eleventh Circuit, in applying the *Monell* standard, further elaborated, "a [municipality] does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. Ga. 2004). Instead, the Eleventh Circuit explained, in order to impose § 1983 liability on a municipality, a plaintiff must prove all of the following, "(1) that his constitutional rights were violated; (2) that the municipality has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id*. (internal citation omitted). Liability for failure to train or supervise extends to a municipality only if "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Lang v. City of Largo*, 2006 WL 889990, *2 (M.D. Fla. 2006) quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). A persistent failure to discipline creates an "inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*." *Id*. quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (citing *Batista v. Rodriquez*, 702 F.2d 393, 397 (2d Cir.1983)).

Plaintiffs' Complaint fails to meet the requirements for imposing municipal liability. Specifically, while the Complaint asserts in a conclusory manner that the City's custom or policy constituted deliberate indifference to Plaintiffs' constitutional rights and caused the alleged violation of their rights, it lacks any factual details from which it could be discerned what the alleged policy or custom is or how it resulted in the alleged violations. Similarly, Plaintiffs' unsupported assertions that the City failed to train or supervise are not substantiated by any facts suggesting prior misconduct, prior poor performance, or generally, a known need to train or supervise. Moreover, the Complaint fails to describe any facts indicating a causal link between the alleged inadequate training and the alleged constitutional violations. Accordingly, Plaintiffs' claims are due to be dismissed against the City for failure to state a claim upon which relief may be granted.

As to the balance of the Complaint, even if the remaining nine counts were specifically pled against the City, it would still be entitled to dismissal. "A municipality is not responsible for the acts of its officers, agents, or servants in making false arrests or for instituting a malicious prosecution." *Neighbors v. City of Birmingham*, 384 So. 2d 113, 113 (Ala. 1980). Moreover, a municipality may only be liable for injury suffered through the neglect, carelessness, or unskillfulness of an agent, officer, or employee of the municipality while in the line and scope of his duty. *Id*. (citing Ala. Code 1975, § 11-47-190). Therefore, the City cannot be liable for intentional torts such as abuse of process, outrage, invasion of privacy, defamation, conspiracy or wantonness. *See City of Birmingham v. Thompson*, 404 So. 2d 589, 595 (Ala. 1981); *see also Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991). Accordingly, the City is entitled to dismissal.

## V. CONCLUSION

Based on the foregoing, Counts IV, V, VI, VII, VIII and IX are **DISMISSED** as to Defendant Brannon. The Motion to Dismiss as to Counts I, II, III and X are **DENIED** as to Brannon and those claims will proceed. The Motion to Dismiss as to the Creola Defendants is **GRANTED** as set out above.

**DONE and ORDERED** this 21st day of August, 2023.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE